January 6, 2020

**Supreme Court**

No. 2018-138-C.A.

(P2/16-1805ADV)

State          :

v.            :

Josephine L. Medina.      :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                          :

v.                          :

Josephine L. Medina.              :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

### O P I N I O N

**Justice Indeglia, for the Court.**  After a trial in Providence County Superior Court, a jury found the defendant, Josephine Medina, guilty of one count of domestic assault with a dangerous weapon, in violation of G.L. 1956 §§ 11-5-2 and 12-29-5.  On appeal, the defendant contends that the trial justice erred by granting two of the state's motions *in limine*, which precluded the jury from (1) hearing evidence of the victim's arrest for gun charges and (2) viewing videos of the victim having engaged in acts of violence.  This case came before the Supreme Court on December 4, 2019, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After carefully considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel

On June 17, 2016, the state filed a criminal information against defendant alleging that, on April 3, 2016, she assaulted Emily Correa, her half-sister, with a knife. At trial, Correa testified that she and defendant had enjoyed a close relationship, would always "hang out," and even lived together along with the father of Correa's son, Garen Bartlett. However, Correa testified that her relationship with defendant soured after Bartlett kicked Correa out of the house and engaged in a relationship with defendant.

According to Correa, on April 3, 2016, she called Bartlett to get money for diapers and wipes for their son, and they agreed to meet. After she determined Bartlett's location, Correa obtained a ride from Corina Walker, who was like a sister to Correa, to meet him. Correa testified that, when she and Walker arrived at the location, Bartlett pulled up behind them, driving defendant's vehicle. Correa testified that she got out of Walker's car, approached the driver's side of defendant's vehicle, and opened the door to ask Bartlett for the money. When she approached defendant's vehicle, she noticed defendant sitting in the front passenger's seat. Correa testified that she saw defendant reach toward the center console and retrieve a black case. She further testified that defendant then pulled the case open and threw it into her vehicle. Correa testified that she reached into the car to see what the object was; and that, by the time she turned around, defendant had exited the car, run around the back of it, and was standing approximately a foot away from Correa when she stabbed Correa in the chest. Correa testified that she held her chest and tried to run, but that defendant continued to swing the knife, and that defendant cut Correa's left wrist as she was rushing at Correa. Correa testified that defendant

eventually stopped chasing her with the knife, but only after Walker helped Correa back into Walker's car.

Although defendant did not testify at trial, her recorded interview with the police was admitted into evidence as a full exhibit. In her interview, defendant admitted that she stabbed Correa, but claimed that her action was in self-defense because Correa had rushed at her and wielded a knife of her own. According to defendant, Correa initially attacked Bartlett while he sat in the driver's seat of her vehicle, then tried to reach over Bartlett to attack defendant. The defendant told police that she then got out of the vehicle, and Correa rushed at her. According to defendant, Correa saw defendant's knife, but she attempted to stab defendant anyway; however, according to defendant she stabbed Correa first. The defendant further claimed that Correa hated her and had reason to attack her because Correa blamed defendant for "snitching on her," which had led to the previous arrest of Correa and Bartlett for gun and drug charges.

Prior to trial, the state filed a motion *in limine* regarding Correa's prior contacts with police and her criminal convictions. The state acknowledged that Correa had a conviction for possession of a controlled substance and conspiracy to violate the Controlled Substances Act, but it sought to prevent the portion of defendant's statement wherein she indicated to police that the drug for which Correa was convicted of possessing was heroin. The state also sought to preclude the jurors from learning that Correa had been arrested on gun-related charges. The state argued that any mention of guns was irrelevant because Correa did not plead to any gun charges, nor had she been convicted of any—only Bartlett had pled to those charges. The state further noted that Correa did not use a gun in this incident.

In opposition to the motion *in limine*, defendant argued that the gun charges against Correa were relevant to defendant's claim of self-defense; specifically, regarding Correa's

alleged bias toward defendant and defendant's state of mind and motive for stabbing Correa. According to defendant, Correa believed that defendant had "snitched" and caused Correa and Bartlett to be charged with the gun crimes. However, the trial justice granted the state's motion, finding significance in the fact that Bartlett "pled to the specific gun charges and [Correa] didn't" and that "this [wa]s not a gun case[.]" The trial justice further found that the record of the drug conviction itself was admissible, but she noted that the defense could not "use the word heroin or the term heroin."[1] The trial justice also found that defendant would be permitted to question Correa at trial regarding "the issue of snitching[,]" motive, and bias toward defendant through her conviction for drug charges alone.

The state also filed a motion *in limine* to preclude defendant from introducing into evidence three videos that had been posted to Facebook that showed Correa engaged in prior acts of aggression. The state contended that the videos were inadmissible under Rule 403 of the Rhode Island Rules of Evidence because they were needless, cumulative, and inflammatory, and that any probative value to defendant was outweighed by unfair prejudice. The state claimed that Correa was expected to testify that she had carried a knife on prior occasions, that she had been arrested in December 2015 with a knife in her possession, had stabbed someone before, and that she had fought with others. Moreover, the state argued that, in accordance with this Court's holding in *State v. Tribble*, 428 A.2d 1079 (R.I. 1981), defendant had to prove she was aware of each of these acts of aggression prior to the incident in question and that that would "turn into a minitrial within a trial, just to prove when each video was taken, [and] when the defendant learned of the acts depicted in each video[.]" Therefore, the state argued, the videos were not necessary to prove that Correa had engaged in violent behavior in the past, were cumulative in

---

[1] On appeal, defendant does not take issue with this part of the trial justice's ruling and only alleges error based on excluding any reference to Correa's arrest on gun charges.

that Correa would testify to those acts, and that the only purpose the videos served was to inflame the passions of the jurors.

The defendant contended that the three videos were admissible because "[t]he video of these instances is what [defendant] saw. That is what created the fear in her." The defendant further argued that the videos actually showed the level of Correa's aggression and what she was capable of doing.

After viewing the three videos in chambers, the trial justice granted the state's motion *in limine* because "such evidence would be cumulative" given that Correa would testify to the information contained in the videos and would not deny that she had stabbed people in the past. The trial justice found that the first video, from 2013, was remote in time from the April 2016 incident and was therefore not admissible. Additionally, the trial justice noted that the second and third videos were cumulative and would be offered solely to inflame the passions of the jurors. Finally, the trial justice determined that the videos would "cause confusion as to what the ultimate issue in this case was." As such, none of the videos were admitted into evidence.

Following four days of trial, the jury found defendant guilty of assault with a dangerous weapon. Subsequently, defendant filed a motion for a new trial. The trial justice denied the motion and sentenced defendant to five years at the Adult Correctional Institutions, but suspended the sentence and placed her on probation for five years. The defendant timely appealed to this Court.

## II

## Standard of Review

"It is well established that decisions concerning the admissibility of evidence are 'within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's

decision unless a clear abuse of that discretion is apparent.'" *State v. Perez*, 161 A.3d 487, 493 (R.I. 2017) (quoting *State v. Mohapatra*, 880 A.2d 802, 805 (R.I. 2005)). "The trial justice will not have abused his or her discretion as long as some grounds supporting his or her decision appear in the record." *Id.* (quoting *State v. Evans*, 742 A.2d 715, 719 (R.I. 1999)).

### III

### Discussion

Before this Court, defendant asserts that the trial justice "caused continual constitutional problems throughout [defendant]'s trial" by granting both motions *in limine*. Specifically, defendant claims that she was prevented from demonstrating Correa's proclivity to use physical violence when angered, which established, according to defendant, that it was reasonable for her to act "quickly, and forcefully" when Correa charged at her with a knife. We address each evidentiary argument in turn.

### A

### The Gun Charges

The defendant contends that the trial justice erred by precluding evidence that Correa had been arrested on gun charges because, defendant argues, it prevented the jurors from fully understanding why defendant was afraid on the date in question, and the extent of Correa's bias toward defendant. The defendant argues that this would have helped the jury to understand why defendant struck the "first physical blow" during the altercation and why that blow was in self-defense. In support of her contention, defendant asserts that gun charges are a more violent offense than drug charges with longer mandatory sentences and that, because Correa believed defendant had caused her to be arrested for the gun charges, Correa would be even more biased toward defendant.

After careful review of the record, we are of the opinion that the trial justice did not abuse her discretion. The trial justice provided more-than-adequate grounds to support her decision to grant the state's motion *in limine* to prevent defendant from mentioning that Correa had been arrested on gun charges. Specifically, the trial justice noted that such charges were eventually dismissed as to Correa and that only Bartlett had pled to them. She further noted, importantly, that use of a gun was not in issue in the present case. Moreover, the trial justice determined that there were "sufficient ways to establish [the snitching] without * * * the gun piece." Indeed, at trial, defendant established that Correa had been arrested in December 2015 with a knife on her person; Correa believed defendant was engaged in a relationship with Bartlett, the father of her child; and Correa blamed defendant for her arrest with Bartlett on the drug charges. Accordingly, we conclude that the trial justice did not abuse her discretion when she prevented any mention that Correa had been arrested on the gun charges.

**B**

**The Facebook Videos**

Next, defendant maintains that the trial justice "looked at the evidence the wrong way round" when she determined that the Facebook videos illustrating Correa's acts of violence were cumulative in light of Correa's testimony regarding those acts. According to defendant, due to Correa's "misleading and sanitized recollection of events[,]" the jurors were unable to appreciate the level of fear that defendant had of Correa. The defendant further claims that she could not adequately cross-examine and impeach Correa regarding her misleading statements about the fights depicted in the videos, which was essential to defendant's self-defense claim. Again, we disagree.

With regard to "the admissibility of specific-acts evidence, pursuant to Rule 404(b) [of the Rhode Island Rules of Evidence], our ruling in *Tribble* is controlling." *State v. Dellay*, 687 A.2d 435, 439 (R.I. 1996). In *Tribble*, this Court held that a defendant claiming self-defense is "entitled to adduce relevant evidence of specific acts of violence perpetrated by the victim against third parties, provided however, that the defendant was aware of these acts at the time of his [or her] encounter with the victim." *Tribble*, 428 A.2d at 1085. However, we noted that this rule is "not to be implemented without limitation[,]" as in cases where "such evidence might allow the principal issue to become lost in a maze of collateral matters[.]" *Id.* Accordingly, a defendant must show awareness of the specific "acts of violence and that the act or acts sought to be introduced are not too remote in time and are of such a quality as to be capable of contributing to the defendant's fear of the victim." *Id.* It is within the trial justice's sound discretion "to limit the extent to which the incidents are sought to be proved." *Id.* at 1086.

Additionally, Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of * * * needless presentation of cumulative evidence."

Turning to the case at bar, our careful review of the record leads us to conclude that the trial justice did not abuse her discretion. The trial justice viewed all three videos and found that the first video, from 2013, was remote in time. Moreover, she found that the second and third videos would be cumulative because Correa was expected to testify to the specific acts depicted in them, and the videos were "highly inflammatory and would be offered solely to inflame the passions of the jurors." The trial justice further determined that the videos would "cause confusion as to what the ultimate issue in this case was[,]" pointing out that the ultimate issue was defendant's perception of Correa, not the substance of the videos.

At trial, both the state and defendant questioned Correa regarding the Facebook videos. Correa admitted during her testimony to stabbing twin sisters and telling defendant about it. She described that she had been in a fight while defendant was present and testified that defendant had joined in that fight. Correa admitted that she regularly carried a knife, especially when she was selling drugs. Correa testified that she did not have a knife in her hand on the date in question, but candidly acknowledged that, if she did, she would have used it and "stabbed [defendant] and Garen Bartlett." On cross-examination, defendant impeached Correa's testimony, after Correa had claimed that she had abandoned her reputation as a fighter, by questioning her regarding a recent video of her fighting.

Moreover, the trial justice determined that the videos were cumulative, would inflame the passion of the jurors, and would "cause confusion as to what the ultimate issue in this case was." This leads us to conclude that the trial justice's findings with regard to the videos were significantly supported by the record and that her exclusion of them was in no manner an abuse of discretion.

Accordingly, we hold that the trial justice did not abuse her discretion by granting either of the state's motions *in limine*.

## IV

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to that tribunal.

STATE OF RHODE ISLAND AND ⬡ PROVIDENCE PLANTATIONS

# SUPREME COURT – CLERK'S OFFICE

# OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Josephine L. Medina. |
| **Case Number** | No. 2018-138-C.A. (P2/16-1805ADV) |
| **Date Opinion Filed** | January 6, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For State: <br><br> Virginia M. McGinn <br> Department of Attorney General |
| | For Defendant: <br><br> Angela M. Yingling <br> Office of the Public Defender |